Can I please record counsel? Doug Phelps on behalf of Adam Asenberg. Your Honor, this case arose as, he's called my Adam Asenberg, was, is a well-known advocate for medical marijuana here in the community in Whitman County and in the surrounding area. He didn't conceal that he was an advocate for medical marijuana. He had a website up where he freely advocated for medical marijuana. He would speak at radio for medical marijuana. He had an ambulance that had medical marijuana on the side of it that he drove. And so it was not a hidden fact that he was involved in medical marijuana. But doesn't the case turn on whether or not any of that is a defense to the existence of probable cause for the distribution of controlled substances that he was arrested for? Well, that indeed is the argument of the county and the government in this case, that merely because he's a medical marijuana patient, that doesn't mean that he can have medical marijuana. That means that it's a defense to the charge. An affirmative defense. An affirmative. But it doesn't defeat probable cause, as the Washington Supreme Court has told us. But in this case, part of our argument is that's information that was withheld from the magistrate and the judges. But would it have made a difference, Mr. Phelps, if the rule of law is that it is an affirmative defense but does not defeat the existence of probable cause to make the arrest? I guess that's a question that we would have to have left to the magistrate, who didn't get that information at the time. Not really, because we do have these cases, we see them all the time, where there's an allegation that whoever issued the search warrant or the arrest warrant wasn't told something that he or she should have been told. Or sometimes it's the other way around. Sometimes information was given that's not quite accurate. In this case, your argument, because we have a room full of law students, your argument is that an important fact was left out. A very important fact, and a fact that was well known. But just a minute, wasn't in the affidavit, didn't the affidavit say that Adam seemed to be functioning as a medical marijuana caregiver? That's true, Judge. Doesn't that affidavit say that? It included in there that he appeared to be acting. Well, the problem is that at that point in time, he's giving an affidavit of what he knows and what he doesn't know. So he's saying, okay, Adam appeared to be functioning as a medical marijuana caregiver to the CI. And at that point, it seems to me one would have a tough time that one could argue judicial deception. Well, I guess to the extent that it wasn't fully disclosed. I mean, fully disclosed. The best that we have, I mean, even with all of your stuff, the best that we have is that he appears to be this, if you will, caregiver. But now we're back to Judge Tallman's question. Even if he appears to be this caregiver, probable cause will exist, and what one can be as a medical caregiver with marijuana is only an affirmative defense. Well, he was not only a caregiver, but he was a patient. Could I – forgive me for interrupting, but what exactly do you think was left out? Because I read the declaration the way Judge Smith does. So what exactly was left out? I believe that they left it out that he was a medical marijuana patient, that he was a medical marijuana advocate. Do you think that makes any difference? Well, I think that goes to – I mean, to be fair, whether you're a caregiver or a patient or an advocate, you're allowed to have then marijuana. And tinctures and edibles, and edibles and tinctures are more used for medicinal reasons than anything else. So you think that just saying caregiver somehow detracts from what he could have used it for? I think that it detracts from his full disclosure that he was a medical marijuana advocate and medical provider for other patients in addition to using it for his own. Is there anything in the record to show that Pullman Police Detective Scott Patrick, the affidavit on the search warrant, was aware that he had a medical marijuana card? Well, I believe if you review the offerings of the respondents, they indicate that he went to his website and that they saw on his website that he indicates he was a medical marijuana provider and patient. And that happened before he requested the search warrant? That happened before he requested the search warrant, and that's in the government's office. Could I get you to change your focus? Your time is ticking. Yes, I know. Do you have another claim about what happened in the holding cell, that your client suffered a seizure and wasn't given proper... They didn't give him any medical treatment. He essentially had a grand mal seizure. Can I stop you right there? Yes. Forgive me for interrupting. How do we know he had a grand mal seizure? Well... Because my understanding is that he suffers from them periodically. I'm going to do this this way because the clock is ticking. Right. My understanding from the complaint is that he suffers from grand mal seizures, but he alleges, and we take his allegations as true at this point, that when he went in, he notified folks that he... At the jail. At the jail, that he thought he might be getting ready to have one sort of thing. And then he didn't know that he fell and hit his head until after he got home. So how do we know that he had a seizure? Well, the government indicates that they had a camera in the room that monitored him. Yes, but does anybody ever say they saw him have a seizure? I don't think so. No, there was. So is it conjecture? Does he just think he had a seizure? Well, no. We're certain he did have a seizure. How are we certain, please? Well, because he had the injury to the back of his head that he did not have when he went into the jail cell. Well, okay, so I don't think I'm missing anything. He got home and he said, oh, I think I must have hit my head and he's... So there's the date stamp we've got to talk about on the photo. Can you explain the discrepancy between the date stamp, which shows that the photograph was taken early on the morning before he was arrested? The camera, the equipment, it's a function of the camera, and the... Are you testifying now? No, I'm not. Well, you asked me for the explanation. Okay, you're supplementing the record with your answer. So the answer is there is no testimony with regard to the discrepancy on the date. No. Sir, is your allegation that the injury that the jail folks, whoever was on duty, was monitoring this closed-circuit TV, and I'm trying to figure out whether you think they should have responded to a seizure or whether you think the injury is the conch on the head, which is it that they failed to respond to? Well, both the seizure and the injury to the back of the head. Okay, so the law requires the officers to have been aware of the need... Right. ...and then to have recklessly disregarded it, deliberate indifference. That's correct. So I don't think there's any evidence that any of them, or is there evidence that any of them were aware that he had a seizure? That is the government's position. They didn't know that he had a seizure. Well, what did the witnesses say on deposition? Did anybody admit that, oh, yeah, we saw him shake and fall and hold himself? No, they did not admit that they observed the seizure. And didn't Detective Patrick interview him at the jail? And his testimony was he didn't see any injury. Well, I think that that interview occurred before he was in the jail, so... But the testimony was I didn't see any head injury. I think that's... I'm going to interrupt a little bit here, my colleagues. It seems to me that what your client said, he told the staff he was suffering and could go into a seizure. Right. That's all he said, right? That's correct. He never said there are certain medications that I need at certain times. He never said there are certain things that cause these seizures. He never said I need medical treatment. He never said, well, there's failure to get medical treatment at the jail even. In fact, the first time we know anything about this is when he gets home and he looks at himself, right? Oh, and his wife examines the injuries of activists. So all of those things he didn't ever say, right? No, he didn't. Could I have... I'm going to lose my... I want to address the third argument, which is the First Amendment violation. I was going to call your attention to exactly that. There's a First Amendment claim as well. Yes. That your client wanted to address the county commissioners. Right. All right. And so my first question is, in this interrogatory answer at ER 164, your client wrote, in Whitman County, if you want to speak at a public county commissioner's meeting, you have to call in advance and inform them you want to speak. So this seems to imply that there's a rule or a statute or something that allows people to speak at a public commissioner's meeting. That's correct. What is that rule or statute? So I think it's a rule of the committee that you have to notify them, which he did. Well, that would imply that there is indeed a right to speak at the meeting. So for me, this is very important to the claim, and I can't find that rule anywhere. It's an open public meeting. He notified them that he wanted to speak. I guess I'm trying to figure out if you would answer a question, because I think that determines whether it's an open public meeting. Because I'm trying to figure out what type of forum it really is. And I read your brief, and I can't find what you think it is. My understanding from reading the government's response is that it's recognized that it is an open meeting, but that you have to request. Open or limited? Limited to requesting in advance an opportunity to speak and then being given five minutes or no more to say what you have to say. Well, our argument is that it is an open meeting because the public is allowed to speak. And when he notified them that he wanted to speak, he got a letter back that said you will not be allowed to speak, and if you attempt to speak, the sheriff will be dealing with you. In order to make that argument, haven't you got to answer Judge Christian's question directly? Yes, somebody's got to answer my question. Somebody's got to answer my question. Where is it written that at this particular type of meeting, a member of the public has the right to speak? I understand there may be time, place, manner restrictions on how long you speak and whatnot, but where is the rule that says that the public can show up and speak? My understanding is that that's in the website that he observed, and that's why he sent in that advisement that he would be asking to speak. Was that a screenshot of that website? I don't know. It hasn't been in there. It has not? No. Okay. Your time has expired, but I'll give you two minutes on rebuttal. I appreciate that. Thank you. We'll hear from the county or from counsel for Detective Patrick. Good morning, Your Honors. May it please the court, I'm Kirk Ellis, and I'm here on behalf of Defendant Scott Patrick, the Pullman police officer involved in the situation. Chris Curley represents the county defendants, and any questions you may have related to the First Amendment and the Eighth Amendment may be directed to him. Are you going to split your time? Yes, we are, Your Honor. Thank you. How much time would you like? Five minutes, please. Okay. As to Defendant Patrick, as the court is well aware, the plaintiff failed to address two specific claims, namely their HIPAA claim and their state constitutional claims in their briefing. Therefore, those claims are void. I don't think you need to waste any time on it. Thank you, Your Honor. I'll turn my attention to the Fourth Amendment claims because those are the only claims that remain as to my client, Scott Patrick. The entire basis for the Fourth Amendment claims against my client relate to Washington State's Medical Use of Cannabis Act, as the court is aware. That's purely a creation of state law. There is no federal right to use or possess marijuana, medical or otherwise. And it's also relevant that at the time of this incident in May of 2011, possession of marijuana, even in small quantities, remained illegal under Washington law as well. Therefore, there was no state law right to create it either. All MUCA did was create an affirmative defense if criminal charges were brought against an individual. Counsel, it's very concerning, always concerning, to me anyway, if the record suggests that a police officer obtained a search warrant without telling the magistrate judge or whoever is going to issue the warrant all the pertinent facts. Should we be concerned in this case that an important fact was left out? Thank you for that question. And in answer to that question, Your Honor, no, I don't believe the court should be concerned that an important fact was left out. In order to establish judicial deception, which the plaintiff was obligated to establish, they had to establish that there was a deliberate falsehood or a reckless disregard for the truth. And also that whatever facts were omitted or whatever false facts were in the affidavit, when those are excised, the remaining facts don't support probable cause. So set aside the would it have made a difference anyway question, because it may not have made a difference. But I'm concerned, I'm always concerned, if something was left out. And I agree, it may not have made a difference in the ultimate probable cause. But just to be clear, I'm worried about the first step. Can you address that? Certainly, Your Honor. In this situation, the record is clear that Defendant Patrick engaged in multiple controlled buys with a confidential informant, that Mr. Eisenberg sold medical marijuana to a confidential informant. The record is also clear and undisputed that he was in possession of marijuana. All those facts establish probable cause. Right, and I'm asking you to address something else. You're telling me why it wouldn't matter that there would still be probable cause even if this fact was left out. I'm asking you to address, please, was a material fact left out? I don't believe it was a material fact, Your Honor. I don't think it was relevant to the court's determination because the medical marijuana permit, all it would have established is an affirmative defense. Well, okay, but let's back up because I think you keep skipping over my question. Are you conceding that the magistrate judge was not told that the opposing counsel's client had this medical authorization? No, Your Honor, I'm not conceding that. The record is what it is as far as what was in front of the magistrate judge. The record is what it is as relates to what Defendant Patrick knew at the time he submitted the information. Right, and I can't see in the record, but I'm inviting you to, and then I'm going to move on, but I'm inviting you to tell me if I missed it, whether or not the magistrate judge was told that fact. I don't believe the record establishes that he was told Mr. Asenberg was a medical marijuana patient. Okay, and I appreciate your argument that you think it doesn't matter, that you think probable cause was established anyway, but I just wanted to clarify that point. So thank you for your time. I mean, isn't Franks v. Delaware a two-step process? First, you have to determine whether or not there was a knowing withholding or nondisclosure of evidence, and then you have to show that it would have been material to the magistrate judge's determination of probable cause, and only if you establish both prongs can we conclude that there was a constitutional violation. That is correct, Your Honor. Yes, it is. So even if the answer to Judge Kristen's question is yes, it wasn't disclosed, he can't make the second prong, which is there would not have been adequate probable cause had we excised. That's correct, Your Honor, yes. Are we really also suggesting then that you're giving in that there was a knowing failure to disclose? Because that's the first problem. It is, Your Honor, and that is not at all clear from the record. We know that there's nothing in the affidavit that says he's a patient, but we also know there's adequate in there that he could be or is functioning as a medical marijuana caregiver. So you're not suggesting, are you, that there's a knowing failure to disclose? Not in any way, Your Honor. What I'm suggesting is that Mr. Asenberg was not in compliance with the MUCA to begin with. He could not be in compliance. There was a registry that was never created at the state level. No one could be in compliance with MUCA. That removes him from the protection of the statute altogether. And I notice that my time is up, and I'd like to turn it over to Mr. Curley. Thank you. Good morning, Your Honor. May it please the court, counsel, my name is Chris Curley from Spokane. I represent the Whitman County defendants in this case. I'm going to confine my comments to the two issues that are particular to Whitman County, specifically the 14th Amendment deliberate indifference claim and then the First Amendment claim. And as I understand, on the first claim, he was booked into the jail at about 2.15 in the afternoon and released shortly after 5 that afternoon. So we're talking about a three-hour time period during which he was essentially held in a holding cell of sorts. Correct. Does the record tell us whether anybody else was in the holding cell? I couldn't find that. That's not in the record. Right. Okay. But there wasn't anyone. Well, it just seems the obvious place to go if you're trying to determine whether or not somebody suffered a seizure, and I couldn't see that anywhere in the records. And if I may be so bold as to make a comment about something that was never placed into the record, I think the court should be aware that we provided the videotape of what went on in that holding cell. You have to be really careful about talking about things that are not in the record. Okay. And it was never used in response to our summary judgment motion. Be that as it may, with respect to the 14th Amendment claim, obviously it's important. First, what individual jail personnel, individual jail officials knew with respect to Mr. Asenberg's medical situation. And on that issue, we have basically one piece of evidence that was in the summary judgment record, and that's that interrogatory answer where Mr. Asenberg claims that he informed the staff when he was being booked that he was, quote, really suffering and could go into a grand mal seizure. And then with respect to what happened in the jail cell, all he said in that interrogatory answer was that the holding cell has a camera, the staff just sat back and watched and did nothing while I cracked my head open enough to make it bleed. I don't think that's enough to establish either a serious medical need or condition or subjective awareness of these significant medical needs. It's a very high standard. It's a very high standard for this type of claim for a pretrial detainee. It certainly is. Are you going to address the First Amendment claim? I am. Are you the guy? I am, Your Honor. So I'm trying to figure out, as you have heard, what rule or statute provides that a member of the public can appear before this type of particular counsel and will be given air time to address the full counsel? I'm not aware of the existence of one. But I think it was the plaintiff's burden in responding to our motion for summary judgment to establish his First Amendment violation. And on this issue, Your Honor, I have a confession. I think both sides sort of were a little wide of the mark in the briefing because the briefs don't really identify what sort of forum we're talking about here. But I think Ninth Circuit case law makes it pretty clear that county commissioners' meetings, city council meetings, they're limited public forums. Well, the problem is, for me, I think that's right generally. But, of course, many of those cases arise in California. In California, there's a Brown Act. And the Brown Act says there's going to be an opportunity for people to address that type of a body. So in the Orange County case that came out a couple of years ago, it's a very comparable, similar case. But there was a rule, a local rule that said you can appear, and it's going to be three minutes, and you can't be disruptive, and so on and so forth. So it seemed to me that this interrogatory response was alluding to something like that in Washington law, and I can't find it. I'm not aware of it either. But, again, we're talking hypothetically now because none of this was in the summary judgment record. But I think the plaintiff might have been able to make out a culpable First Amendment claim if there was some sort of rule or statute that said at a city council meeting or a meeting of the county commissioners, there has to be time set aside for members of the public to come in and address any issue, any issue at all. And there's no such thing. Well, I don't know if there is or not. Forgive me for interrupting, but the response he received from the commissioner, the chair of the board, I think certainly indicated that there wasn't going to be any opportunity to address the full council commissioners. He could make an appointment one-on-one, and that was it, which also caused my eyebrow to raise. I just don't know what the rule is locally. It does. And if the summary judgment record was such, if it had established that there was a time set aside at these meetings for the public to come in and address any issue at all, any issue that was of concern to them, and in response to Mr. Asenberg indicating that he wanted to show up at one of these meetings and during this open mic time, if you will, talk about his views on medical marijuana, and he was told, if you show up, the sheriff's going to escort you from the building, I think we'd be having a different discussion, frankly. But I think your point is, and I guess I'm trying to make sure I understand, I think your point is that here we are, we're looking at a First Amendment, whether it's been violated or not, and it seems to me that your point is somebody ought to come forth with the statute that suggests that there's some right or non-right, that it's either a public forum or a limited forum or a non-public forum, and then proceed with the argument. But it didn't happen in this particular argument, and it is summary judgment. Isn't that your argument, as I understand it? That is my argument. All right. But the case law makes it clear that if we accept that this is a limited public forum, time, place, manner, and even content restrictions are permissible, and a public entity consistent with that rule is allowed to set an agenda. We're having a meeting, and at our meeting on Tuesday— We're having a hypothetical discussion about the First Amendment. We're now assuming it's a limited public forum and then deciding the case. Thank you. Thank you very much. Anything else? Nothing. Okay. Thank you. Thank you very much. Mr. Phelps, I'll give you the final word for a couple of minutes. We cited in our brief to the excerpts of record where it addressed the commissioners advising Mr. Asenberg that he would have to— if he attended the public meeting, he wouldn't be allowed to speak. That's the letter, right? It addresses the letter. Right. Those sites are in our brief at Page 2. But is there anything else besides the county commissioner's letter? Well, I think that if you look at our excerpts of record, it's in the affidavit, one of the affidavits that they filed on their motion for summary judgment. Sorry, then who filed? It was filed by—it's ER-130. Okay. And it's an affidavit from Evans, Craven, and Lackey as part of their statement of facts in the summary judgment. Wait a second. An affidavit by the law firm? I'm looking for witnesses. It's their statement of facts. I'm looking for some evidence, you know, something I can actually rely on. If you look at ER-130 and our excerpts of records, it's included in there and it's part of their— This says at ER-130, at some point after the events on May 4th, Mr. Asenberg indicated he intended to address his grievance at a county commissioner's meeting, and then it describes the letter that he received. Then it talks about the commissioner's letter informing him that the meetings were for commissioners Not an open—not a forum for individuals to present their— And then on the next page— My worry about this is, counsel, that you can read all that to me. It's in an affidavit, and they may all be good facts for you. But then I looked, as did Judge Christin, for the rules. I'm sorry? I looked for the rules. I looked for the statute. I looked for the regulation. I looked for the something in order to put that evidence against, and it wasn't there. And so then, if I take this affidavit as true, I could suggest this is a non-public forum at all. Well— And then you would have no right to speak. And so I was looking for the rule. That's why Judge Christin's question—that's why I kept pointing you at her. Right. It seems to me that you've got to get to the rules sometime. You just can't talk about what the facts are. Well, I'm not sure that a rule exists. Well, you might have something to suggest what the normal policy is and what it isn't. My client notified them that he intended to speak. The response that he got to his letter that he intended to speak was that he would not be allowed to speak. And if he did, he would be— And so am I to take that as the rule? Well, it sounds like— Or am I to take that as a letter that was contrary to the rule? Well, I think that's— If I take that as the rule, then I'm all of a sudden at a limited public forum at best, and then I'm saying to myself, well, then why not a reasonable and viewpoint-neutral restriction? And why I'm trying to figure out why it wouldn't be that only people who have put themselves on the agenda are allowed to speak, and it doesn't matter who's put themselves on the agenda, they get to speak. So then I say, well, he loses on limited public forum. If I go non-public forum, he doesn't get to come at all. And so then again, you lose. Every time I try to give you the benefit of the doubt about what you got there, I got no rule to say they were wrong. I think what—and what the indication is in the record is that he notified them he was going to speak at the meeting. The response was you're not going to be allowed to speak, and if you do, you'll be arrested. I believe that that's a limitation on speech. Well, because of what? Well, because he's been told— What law? What rule? But it's a business meeting. I mean, you don't just—it's not a soapbox in Hyde Park. You don't just get to go to the meeting and stand up and demand the attention of everybody in the room and say whatever it is you want to talk about. I think the response that they told him was if you have a grievance, you can take it up with us personally, telling them that they didn't want him to participate in a public arena. They wanted to do this in private. That's assuming a public arena. Yeah. Okay. I think we have to— I understand your argument. Thank you. Thank you all very much. The case just argued is submitted. We'll get you a decision as soon as we can. The next case on the calendar is United States of America v. Brian F. Charette, No. 17-30051.
judges: Tallman, N.R. Smith, Christen